UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-307(1) (SRN)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff-Respondent, )<br>)<br>v. )<br>)<br>ANTHONY MICHAEL NORTON, )<br>)<br>Defendant-Petitioner. ) | **28 U.S.C. § 2255 PETITION TO VACATE SENTENCE** |

## I. INTRODUCTION

The defendant-petitioner, Anthony Michael Norton, by and through his undersigned counsel, hereby respectfully moves the court pursuant to 28 U.S.C. § 2255 to vacate his 180-month sentence on Count 1, "Felon in Possession of a Firearm," which charged a violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

As further explained below, Mr. Norton is "actually innocent" of the enhanced, mandatory minimum Armed Career Criminal Act ("ACCA") sentence of 180-months. Pursuant to the Supreme Court's holdings in *Shular v. United States*, 140 S. Ct. 779, 784-85 (2020) and *Descamps v. United States*, 570 U.S. 254, 260-61 (2013), the Eighth Circuit's holdings in *United States v. Oliver*, 987 F.3d 794, 806 (8th Cir. 2021) and *Gonzalez v. Wilkinson*, 990 F.3d 654 (8th Cir. 2021), and the reasoning applied by this Court in *United States v. Henry*, 19-cr-303-SRN-KMM, Doc. 106 (D. Minn. Nov. 10, 2021), Mr. Norton's sentence should be vacated.

1

Mr. Norton respectfully requests that this Court grant his petition and order resentencing without application of the ACCA's 180-month mandatory minimum sentence.

## II.     RELEVANT PROCEDURAL HISTORY

### A.  Complaint and Indictment

On October 20, 2016, the government filed a criminal complaint alleging against Mr. Norton one count of "Felon in Possession of a Firearm," in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (ECF No. 1 at 1.)  On November 8, 2016, a federal grand jury indicted Mr. Norton with one count of being a "Felon in Possession of a Firearm," in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  (ECF No. 10 at 1.)

### B.  Plea Agreement and Presentence Investigation Report

On January 24, 2017, Mr. Norton entered a guilty plea to Count 1.  (ECF No. 32 at 1.)  Although the parties entered into a plea agreement, they did not agree as to whether any of Mr. Norton's prior convictions were "violent felonies or serious drug offenses" within the meaning of the ACCA, and Mr. Norton expressly reserved the right to challenge his alleged ACCA status at sentencing.  (*Id.* at 3 ¶ 5.a.)

The presentence investigation report ("PSR") recommended application of the ACCA enhancement under 18 U.S.C. § 924(e)(1), based on three offenses:  (1) a 2005 conviction for two counts of Minnesota Second Degree Assault that had occurred on the same occasion (*i.e.*, April 23, 2004) (PSR ¶ 42);  (2) a 2006 conviction for Minnesota Fourth Degree Drug Sale of methamphetamine (PSR ¶ 45); and (3) a 2009 conviction for Minnesota Domestic Assault (PSR ¶ 52.)  (*See* PSR ¶ 23.)

2

### C. Sentencing Hearing and Judgement

In pre-sentencing filings and at sentencing, Mr. Norton objected to application of the ACCA to his case. (PSR at A.1-A.2; ECF No. 43 at 1-2, 4-20; ECF No. 67 at 3-4, 18-20.) At the May 17, 2017 sentencing hearing, the Court determined at that that Mr. Norton was subject to the ACCA and sentenced Mr. Norton to a mandatory minimum term of 180-months imprisonment, followed by five years of supervised release. (ECF No. 47; ECF No. 67 at 4-5, 22.) Mr. Norton is currently incarcerated at Atwater USP, and his projected release date is October 19, 2029. *See* Federal Bureau of Prisons, *Find an inmate.*, available at https://www.bop.gov/inmateloc/ (last visited Jan. 31, 2022).

On appeal, Mr. Norton continued his challenge to his ACCA designation, but the Eighth Circuit affirmed his sentence. *See United States v. Norton*, Case No. 17-2234, Entry ID: 4691908 (8th Cir. Aug. 9, 2018). (ECF Nos. 52, 69.).

### III. ANALYSIS

#### A. Mr. Norton's Claim Is Cognizable and Presents a "Miscarriage of Justice" That This Court May Now Correct.

As further explained below, Mr. Norton's claim is properly before this Court. Five separate United States District Court Judges in Minnesota have held that *habeas* claims such as Mr. Norton's—asserting that a defendant is "actually innocent" of an ACCA mandatory-minimum sentence—are cognizable under similar circumstances, regardless of timing and procedural posture. *See, e.g., United States v. Phillips*, No. 11-cr-107 (JNE), ECF 76 at 8-20 (D. Minn. Jan. 4, 2021) (Ericksen, J.); *United States v. Sims*, No. CR 13-109(1) (DSD), 2020 WL

3

7232254, at *2 n.1-2 (D. Minn. Dec. 8, 2020) (Doty, J.) (noting that "a procedural default may . . . be excused if the defendant can show actual innocence" and finding that the Court "may properly consider Sims's motion and grant the relief he seeks because his claim falls within the actual-innocence exception to the statute of limitations[,]" *i.e.*, "Sims is actually innocent of being an armed career criminal"); *United States v. Smith*, No. CR 03-94 (DSD/HB), 2020 WL 6875402, at *2 n.1 (D. Minn. Nov. 23, 2020) (Doty, J.) (same); *United States v. Isaacson*, No. CR 07-320 (JRT/RLE), 2020 WL 6566466, at *3 (D. Minn. Nov. 9, 2020) (Tunheim, C.J.); *United States v. Boldt*, No. CR 09-37 (MJD), 2020 WL 5407910, at *1 (D. Minn. Sept. 9, 2020) (Davis, J.) (noting that "[t]he government does not dispute that[,] should the Court find that Petitioner's sentence under the ACCA is unlawful, then his claim of actual innocence excuses both his procedural default and his untimeliness" and finding that, because "Petitioner's sentence under the ACCA is unlawful," "his petition is timely"); *United States v. Bugh*, 459 F. Supp. 3d 1184, 1190-94 (D. Minn. 2020) (collecting cases and analyzing applicable Eighth Circuit precedent).

    **1.    Mr. Norton's claim is cognizable.**

Consistent with the provisions of 28 U.S.C. § 2255(a), Mr. Norton's petition is cognizable.

As noted *supra*, Mr. Norton is "[a] prisoner in custody under sentence of a court established by Act of Congress . . . ." § 2255(a). Mr. Norton remains incarcerated at Atwater USP in California, with a projected release date in 2029.

Mr. Norton's claim is that the enhancement of his sentence on Count 1 to the 180-month ACCA mandatory minimum is unlawful. Absent his ACCA status, the statutory maximum term of imprisonment for Mr. Norton's offense is 10 years. 18 U.S.C. § 924(a)(2) ("Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided by this title, imprisoned not more than 10 years, or both."). In other words, Mr. Norton is "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States[,] . . . [and] that the sentence was in excess of the maximum authorized by law, or otherwise subject to collateral attack . . . ." § 2255.

Thus, Mr. Norton's claim is cognizable for purposes of § 2255(a), and he "may move the court which imposed the sentence to vacate, set aside or correct the sentence[,]" as he does by way of the present petition.

### 2. Mr. Norton's claim falls within the "actual innocence" exception to the statute of limitations.

The statute of limitations for 28 U.S.C. § 2255 claims is set forth in subsection (f) of that provision:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> > (1) the date on which the judgment of conviction becomes final;
> >
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

>(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Courts analyze the statute of limitations on a claim-by-claim basis. *See DeCoteau v. Schweitzer*, 774 F.3d 1190, 1192 (8th Cir. 2014) (citing *Capozzi v. United States*, 768 F.3d 32, 33 (1st Cir. 2014)).

Mr. Norton's § 2255 petition does fall outside the one-year period of limitation set forth above. Nevertheless, as explained *infra*, the Court has the power to address Mr. Norton's § 2255 claim because he is "actually innocent" of the 180-month mandatory minimum ACCA sentence imposed on Count 1.

### a. Supreme Court precedent.

The Supreme Court has held that a prisoner may receive habeas relief—even if his claim is barred by the statute of limitations—if he can demonstrate "actual innocence."[1] *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "In other words, a credible showing of actual

---

[1] The terms, "actual innocence" and "miscarriage of justice," are used interchangeably as applied to the statute of limitations exception discussed herein. *See, e.g., McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992); *Watts v. Norris*, 356 F.3d 937, 941 (8th Cir. 2004); *Charboneau v. United States*, 702 F.3d 1132, 1136 (8th Cir. 2013); *Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012); *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005); *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001); *United States v. Morgan*, 230 F.3d 1067, 1069-70 (8th Cir. 2000); *United States v. Bailey*, 235 F.3d 1069, 1071-72 (8th Cir. 2000).

innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *Id.* at 392, 133 S.Ct. 1924. The Supreme Court has explained that "'[t]his rule, or fundamental miscarriage of justice exception, is grounded in the "equitable discretion" of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons.'" *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *see also Boumediene v. Bush*, 553 U.S. 723, 739 (2008) ("[t]he Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom").

Although the Supreme Court has found that the actual-innocence exception applies when the defendant is actually innocent of his crime of conviction or is actually innocent of his capital sentence,[2] the Court has left open the question of whether the actual-innocence exception applies when the defendant is actually innocent of a non-capital sentence. *Dretke v. Haley*, 541 U.S. 386 (2004).

### b. Eighth Circuit precedent.

The first-decided case on this issue in the Eighth Circuit applied the actual-innocence exception to non-capital sentences. *See Jones v. Arkansas*, 929 F.2d 375 (8th Cir. 1991). In *Jones*, the Court of Appeals found that a defendant seeking habeas relief under 28 U.S.C. § 2254 was correct in arguing his sentencing under a habitual-offender statute violated the

---

[2] *See, e.g., Bousley*, 523 U.S. 614, (crime of conviction); *Sawyer*, 505 U.S. 333 (capital sentence).

7

*ex post facto* clause of the Constitution and disagreed with the government's assertion that his claim was procedurally defaulted, reasoning:

> If one is "actually innocent" of the sentence imposed, a federal habeas court can excuse the procedural default to correct a fundamentally unjust incarceration. **It would be difficult to think of one who is more "innocent" of a sentence than a defendant sentenced under a statute that by its very terms does not even apply to the defendant.**

*Id.* at 378, 380-81 (citations and footnotes omitted; emphasis added); *see also United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *United States v. Neely*, 979 F.2d 1522, 1524 (11th Cir. 1992) and vacating, consistent with *Jones*, a non-capital sentence that was unlawful because it exceeded the statutory maximum "'to avoid manifest injustice[,]'" notwithstanding that the claim was procedurally defaulted); *Lofton v. United States*, 920 F.3d 572, 576-77 (8th Cir. 2019) (citations omitted) (holding that the actual-innocence exception applied to a defendant's challenge to his non-capital sentence because that sentence was alleged to be in excess of the statutory maximum and ruling that the defendant's "'illegal sentence presents a 'miscarriage of justice' that § 2255 permits us to correct, despite his failure to raise the issue earlier'"); *cf. Payer v. United States*, 2013 WL 633375, at *4 (D.S.D. Feb. 20, 2013) (quoting 18 U.S.C. § 3582(c)(1)(B), noting that, "[r]egardless of the applicable statute of limitations, the court may revise sentences so long as the revision is 'expressly permitted by statute[,]'" and ruling that, "[p]ursuant to 28 U.S.C. § 2255(a), the court has the statutory authority to modify a sentence that 'was in excess of the maximum authorized by law'" (citing *United States v. Daily*, 703 F.3d 451, 453–54 (8th Cir. 2013))).

8

As the earliest opinion of the Eighth Circuit addressing the question of whether the actual-innocence exception applies to non-capital sentences, *Jones* is binding on this Court— even if panels of the Eighth Circuit have subsequently issued conflicting decisions—unless *Jones* has been overruled by the Eighth Circuit sitting *en banc*. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (*en banc*) ("We definitively rule today, in accordance with the almost universal practice in other federal circuits, that when faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.'" (internal citation omitted) (quoting *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006))). It has not.

More specifically, although multiple panels of the Eighth Circuit since *Jones* have expressed doubt that the actual-innocence exception applies to challenges to non-capital sentences,[3] those cases have not abrogated *Jones* as binding authority. Nor did the *en banc*

---

[3] *See, e.g., Waring v. Delo*, 7 F.3d 753, 757-58 (8th Cir. 1993); *Higgins v. Smith*, 991 F.2d 440, 441 (8th Cir. 1993); *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001) (*dicta* failing to mention *Jones* or *Wilson, supra*, as explained in *United States v. Bugh*, 459 F. Supp. 3d 1184, 1193 n.17 (D. Minn. 2020)); *Lindsey v. United States*, 615 F.3d 998, 999-1001 (8th Cir. 2010) (citing *dicta* from *Embrey v. Hershberger*, 131 F.3d 739, 740 (8th Cir. 1997) (*en banc*), failing to mention the Eighth Circuit's holdings in *Jones* or *Wilson* that the actual-innocence exception *is* available to remedy errors in noncapital sentencing, and dealing with a distinguishable challenge to a sentencing guidelines computation that was *not* unlawful (*i.e.*, "imposed without, or in excess of, statutory authority," *Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (*en banc*)), as opposed to *Jones* (illegal application of habitual-offender statute), *Wilson* (sentence in excess of statutory maximum), and the present matter (both of the foregoing)); *Roundtree v. United States*, 885 F.3d 1095, 1098 n.3 (8th Cir. 2018) (where the defendant had not argued actual innocence to excuse his procedural default, and the Court found that, because the defendant could not show prejudice, it had no need to address whether he could show actual innocence, nevertheless commenting in a footnote without mentioning *Jones* or *Wilson* that the actual-innocence exception "requires proof that

9

decision in *Embrey v. Hershberger*, 131 F.3d 739 (8th Cir. 1997) (*en banc*), insofar as that opinion merely expressed skepticism as to non-capital applications of the actual-innocence exception in *dicta*,[4] given that the defendant was not actually challenging his non-capital sentence, but instead was challenging his convictions. 131 F.3d at 739-41; *see also Sun Bear v. United States*, 644 F.3d 700, 705-06 (8th Cir. 2011) (*en banc*) (*dicta* citing *dicta* from *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001) and failing to discuss *Jones* or *Wilson*).

More recently, in *Lofton v. United States*, 920 F.3d 572 (8th Cir. 2019), the Eighth Circuit applied the "actual innocence" exception to the statute of limitations for review of whether a past drug conviction qualifies as an ACCA "serious drug offense." In *Lofton*, the Eighth Circuit held that the District Court erred in determining that a § 2255 defendant-petitioner's drug conviction qualified as an ACCA "serious drug offense" on "maximum term of imprisonment" grounds, despite the fact that the defendant-petitioner had failed to raise the issue both on direct appeal and in his § 2255 petition. 920 F.3d at 576-77. Quoting

---

[the defendant] was factually innocent of the crime, not merely that there was error in imposing a sentence enhancement" (citation omitted)).

[4]     *See, e.g., Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 35 (2012) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 399, 5 L.Ed. 257 (1821) for the proposition that "general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision."); *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 352 n.12 (2005) ("Dictum settles nothing, even in the court that utters it."); *Kastigar v. United States*, 406 U.S. 441, 454–55 (1972) (holding that "broad language" that is "unnecessary to the Court's decision . . . cannot be considered binding authority" (footnote omitted)); *Edwards v. Prime Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("[R]egardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case." (citations omitted)).

10

the § 924(e)(2)(A)(ii) definition of a "serious drug offense" as "one 'for which a maximum term of imprisonment of ten years or more is prescribed by law[,]'" the Court of Appeals ruled that the defendant-petitioner's "Illinois conviction for unlawfully delivering cannabis" was "not a serious drug offense under the ACCA" because it "ha[d] a maximum punishment of three years' imprisonment[.]" *Id.* at 576 (citations omitted).

The Eighth Circuit "reject[ed] the government's argument that Lofton is not entitled to relief because he procedurally defaulted his claim that his is not a serious drug offense by failing to raise it on direct appeal and in his § 2255 petition[,]" reasoning that "[h]is illegal sentence presents a 'miscarriage of justice' that § 2255 permits us to correct, despite his failure to raise the issue earlier." *Id.* at 576-77 (citing *Sun Bear*, 644 F.3d at 705, which it characterized as "noting that a sentence that exceeds the statutory maximum is an error of law resulting in fundamental miscarriage of justice but denying § 2255 motion because sentence fell within statutory range," and *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (*per curiam*) for the proposition that "Wilson has procedurally defaulted this claim, but § 2255 expressly makes relief available if the sentence was in excess of the maximum authorized by law, and we agree . . . that we should grant relief from the illegal sentence to avoid manifest injustice" (internal quotation marks omitted; footnote omitted)). The Court of Appeals specifically noted that, absent the erroneous designation of his Illinois conviction for unlawfully delivering cannabis as a serious drug offense, the defendant-petitioner "would have been sentenced within the 120-month statutory maximum for his federal firearms conviction[,]" and that "[h]is 327-month sentence, imposed with the erroneous

11

enhancement, vastly exceeds this statutory maximum." *Id.* at 576 (citation omitted). Thus, because the defendant-petitioner's sentence was "'in excess of the maximum authorized by law' and therefore illegal," the Eighth Circuit held that "§ 2255 entitles him to relief." *Ibid.* (citing 28 U.S.C. § 2255(a); *Sun Bear*, 644 F.3d at 705 ("An unlawful or illegal sentence is one imposed without, or in excess of, statutory authority.")).

Pursuant to binding Eighth Circuit precedent in *Jones* and *Lofton*, a prior drug offense which was erroneously counted toward an ACCA sentencing enhancement and resulted in a mandatory minimum sentence exceeding the otherwise applicable maximum presents a "miscarriage of justice" that § 2255 allows a court to correct at any time. Thus, because Mr. Norton's § 2255 claim falls within the "actual innocence" exception to the § 2255(f) statute of limitations, this Court can address the merits of his argument, as set forth below.

> **B.  In Light of *United States v. Oliver*, 987 F.3d 794 (8th Cir. 2021) and *Gonzalez v. Wilkinson*, 990 F.3d 654 (8th Cir. 2021), Mr. Norton Is "Actually Innocent" of the 180-month ACCA Sentence, Such that His Sentence Should Be Vacated.**
>
>> **1.  Mr. Norton would not have Armed Career Criminal status under the statute but for his 2006 Minnesota drug sale conviction.**

A person is only eligible for a 180-month mandatory minimum sentencing enhancement under the ACCA if they have three or more previous convictions, committed on separate occasions, for a violent felony or serious drug offense. 18 U.S.C. § 924(e)(1). The PSR for Mr. Norton identified three—and only three—prior convictions stemming from conduct occurring on separate occasions that could potentially qualify as ACCA predicate offenses. (PSR ¶ 23.) Mr. Norton's 2006 Minnesota Fourth-Degree Controlled Substance

12

Sale is one of those three convictions. (*Ibid*.) According to the PSR, Mr. Norton is thus ineligible for the ACCA sentencing enhancement unless his 2006 drug sale conviction counts as a "serious drug offense" under section 924(e)(2)(A)(ii).

> **2.    To qualify as a "serious drug offense," a prior state conviction must categorically punish the same or narrower conduct than is proscribed in the federal Controlled Substances Act.**

As relevant here, the ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." § 924(e)(2)(A)(ii). Thus, for state drug offenses, only those convictions that both 1) involve a controlled substance as defined by federal law and 2) are punishable by more than 10 years imprisonment may count as prior "serious drug offenses" under the ACCA.

Courts use the categorical approach—looking only to the fact of conviction and the statutory definition and elements of the prior offense, rather the particular, underlying facts—to determine if a previous conviction is an ACCA predicate. *See, e.g., Shular v. United States*, 140 S. Ct. 779, 784-85 (2020) ("[a] court may only look to a state offense's elements, not to the facts of the case or labels pinned to the state conviction" in determining whether an offense qualifies as an ACCA "serious drug offense"); *Descamps v. United States*, 570 U.S. 254, 260-61 (2013) (courts "look only to the statutory definitions—i.e., the elements—of a defendant's [offense] and not to the particular facts underlying [the offense]" in deciding

13

whether the offense qualifies as an ACCA "violent felony" (citation and internal quotation marks omitted)); *United States v. Coleman*, 918 F.3d 592, 593 (8th Cir. 2019); *United States v. Tucker*, 740 F.3d 1177, 1179 (8th Cir. 2014) (*en banc*).

The Eighth Circuit, following Supreme Court precedent, applies the categorical approach to state drug offenses:

> To qualify as "serious drug felonies," Oliver's state convictions must "involv[e] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" that is listed on the federal controlled substances schedules. To "determin[e] whether a prior . . . conviction qualifies as a predicate offense for purposes of [a] federal sentencing enhancement[ ], we apply a categorical approach that looks to the statutory definition of the prior offense, not to the facts underlying a defendant's prior convictions." When "[u]sing the categorical approach, we focus solely on whether the elements of the crime of conviction sufficiently match the conduct of a serious drug [felony]." ***"If the state offense sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense."***

*United States v. Oliver*, 987 F.3d 794, 806 (8th Cir. 2021) (internal citations omitted; emphasis added).

> **3.** ***Oliver*** **and** ***Gonzalez*** **void Mr. Norton's enhanced 180-month mandatory minimum ACCA sentence.**
>
> **a.** **Minnesota's definition is categorically broader than its federal counterpart.**

The Minnesota definition of methamphetamine includes all possible isomers, while the federal definition is limited to only the optical isomer of methamphetamine. "Isomers" are two or more molecules that are identical in chemical formula, but which differ in

14

structure and arrangement. *See, e.g.*, Ernest L. Eliel, et al., Stereochemistry of Organic Compounds 1021 (1994).

Minnesota law defines methamphetamine as "methamphetamine, its salts, isomers, or salts of its isomers." Minn. Stat. § 152.02, subd. 3(d)(2). Methamphetamine's federal definition is much narrower. Federal law contains nearly the same initial language: "any quantity of methamphetamine, including its salts, isomers, and salts of its isomers." 21 U.S.C. § 812, Schedules II(c) and III(a)(3). However, federal law has a specific definition of "isomer" that depends upon the applicable drug schedule. For those schedules where methamphetamine appears (*i.e.*, II(c) and III(a)(3)), "isomer" means *only* "the optical isomer." 21 U.S.C. § 802(14). In analyzing this issue, the Seventh Circuit concluded that, "for purposes of federal drug offenses, methamphetamine includes only its optical isomers." *United States v. De La Torre*, 940 F.3d 938, 951 (7th Cir. 2019) (ruling that an Indiana statute, which allowed for methamphetamine to be defined by something more than solely optical isomers, was overbroad).

The Minnesota legislature knew how to limit the definitional isomers to only "optical isomers" when it wished, demonstrating that it was a conscious choice to leave the definition of methamphetamine as broad as possible. The Minnesota legislature limits the definition of amphetamine, for example, to just its "optical isomers." *See* Minn. Stat. § 152.02, subd. 3(d)(1). And the "usual rule" of statutory construction suggests that, "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9

15

(2004); *also De La Torre*, 940 F.3d at 951 (observing that, because when Indiana intended to limit the scope of a statute to a specific isomer it did so, Indiana's generic use of "isomer" in relation to methamphetamine must be interpreted as an intent to control something broader than only optical isomers).

### b.     *Oliver* and *Gonzalez*.

In *Oliver*, the Eighth Circuit considered whether a district court had erred by finding that a defendant had the requisite "serious drug felonies" to support a sentencing enhancement when it relied on two Illinois drug convictions. 987 F.3d at 805. Pursuant to binding Supreme Court precedent, the Eighth Circuit applied the categorical approach to determine whether the Illinois statutes were overbroad as compared to the federal drug statutes. *Id* at 806.

The Eighth Circuit adopted the Seventh Circuit's reasoning and approach to the importance of isomer definition in comparing drug statutes. *Id.* at 807 (citing *United States v. Ruth*, 966 F.3d 642, 645–47 (7th Cir. 2020) (holding that Illinois's definition of cocaine is categorically broader than the federal definition)). The *Oliver* court observed that "under Illinois law, cocaine includes "optical, positional, and geometric isomers." By contrast, federal law defines cocaine to include only "optical and geometric isomers."" *Id.* (internal citations omitted). The Eighth Circuit thus reasoned that "Illinois's definition of cocaine is "categorically broader than the federal definition."" *Id.* (citing *Ruth*, 966 F.3d at 645–47).

In *Oliver*, the underlying conviction did not specify the type of drug for which the defendant had been convicted. Because it was impossible for the Court of Appeals to know

16

whether the prior conviction involved a substance listed under federal law or not, the government had failed to prove beyond a reasonable doubt that the prior conviction qualified as a predicate offense and the defendant therefore was entitled to resentencing. *Id.* at 807–08.

In *Gonzalez*, the Eighth Circuit considered whether a Florida conviction for possession of marijuana could serve as a disqualifying offense for cancellation of removal proceedings. 990 F.3d at 657. The primary issue before the court was whether the Florida conviction was a state offense relating to a controlled substance as defined in the Controlled Substances Act. *Id.* at 658. The Eighth Circuit again applied the categorical approach to review whether a state drug conviction was overbroad: "Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Id.*

The Court of Appeals observed that the federal definition of marijuana under the Controlled Substances Act expressly excluded the mature stalks of Cannabis sativa L., products made from mature stalks, and oil or cake made from the seeds of such plant. *Id.* The Florida statute, in contrast, made no exemption for either seeds or mature stalks from its definition of marijuana. *Id.* The parties agreed that the Florida statute covered conduct not covered by the federal one. The government argued, however, that the defendant must show a "realistic probability" that Florida would prosecute and convict someone under the state statute for conduct not covered by the federal statute. *Id.*

17

The Eighth Circuit rejected the government's interpretation, finding that a "realistic probability" requirement is at odds with the categorical approach itself, which focuses on the elements of conviction rather than the facts underlying the case. *Id.* at 660. The court concluded that in applying the categorical approach, state law crimes should be given their plain meaning. *Id.* at 661. "Because the Florida statute under which Gonzalez was convicted offers no such exemption, it is unambiguously broader than the federal law . . . This is all that Gonzalez was required to show under the categorical approach." *Id.*

        **c.**        **Mr. Norton's enhanced sentence is void, because the categorical approach bars his underlying drug conviction from qualifying as a "serious drug offense" under the ACCA.**

Mr. Norton's Fourth-Degree Controlled Substance conviction allowed the state to prove the existence of the subject controlled substance—methamphetamine (PSR ¶ 45) —as identified under Minnesota law. *See* Minn. Stat. § 152.024; Minn. Stat. § 152.02, subd. 3(d)(2). Because Minnesota law defines methamphetamine to include substances that would not qualify as methamphetamine under federal law, the binding categorical analysis applied by the Eighth Circuit in *Oliver* and *Gonzalez* forecloses Mr. Norton's Minnesota methamphetamine conviction from qualifying as an ACCA predicate "serious drug offense."

This Court recently had occasion to consider this exact issue at sentencing in the case of *United States v. Henry*, No. 19-cr-303-SRN-KMM (D. Minn. Nov. 10, 2021). The question before the Court then, as now, was whether a Minnesota drug conviction for methamphetamine could qualify as a prior serious drug offense for purposes of an ACCA mandatory minimum sentencing enhancement. After extensive supplemental briefing and

argument by the parties, this Court determined that non-optical isomers of methamphetamine exist, and that the government could test for them, though it chooses not to.  Sentencing Tr. 16, *United States v. Henry*, No. 19-303 (SRN/KMM) (D. Minn. Nov. 10, 2021).  In other words, the Court found that the distinction between the Minnesota state statute defining methamphetamine and its federal counterpart is far from illusory.  Instead, federal law actually excludes substances criminalized under Minnesota law.  *Id.*  This Court, applying the binding Eighth Circuit precedent detailed above, then concluded: "Here there really is no question that these two crimes cannot constitute predicate offenses because Minnesota's methamphetamine drug laws are categorically overbroad.  Therefore, the Court concludes that Mr. Henry is not an armed career criminal."  *Id.* at 17.

Since the Court's decision in *Henry*, Judge Doty, Judge Brasel, and Judge Montgomery have all joined this Court in applying the same analysis and finding Minnesota drug laws categorically overbroad for purposes of statutory sentencing enhancements.  *See, e.g., United States v. Heard*, No. 19-161 (DSD/DTS) (D. Minn. Jan. 21, 2022) (Doty, J.) (holding that a Minnesota second-degree sale of MDMA conviction is categorically overbroad and cannot serve as an ACCA predicate); *United States v. Stevens*, No. 21-63 (NEB/LIB) (D. Minn. Dec. 13, 2021) (Brasel, J.) (same as to a Minnesota conviction for Third Degree Controlled Substance Crime – Sale of Methamphetamine, in the 21 U.S.C. § 851 context); *United States v. Owen*, No. 20-195 (ADM/BRT) (D. Minn. Nov. 16, 2021) (Montgomery, J.) (same as to Minnesota third-degree sale of cocaine, again in the ACCA context).

In sum, Mr. Norton's prior methamphetamine conviction, like Mr. Henry's, is under the same Minnesota state law that this Court has found categorically overbroad for purposes of the ACCA sentencing enhancement. Just as with Mr. Henry, *Oliver* and *Gonzalez* render Mr. Norton's ACCA sentence legally invalid.

## IV. CONCLUSION

In light of *Shular*, *Descamps*, *Oliver,* and *Gonzalez, supra,* Mr. Norton is "actually innocent" of the enhanced, mandatory-minimum ACCA sentence of 180-months he received, and vacatur is therefore warranted. Thus, the Court should resentence Mr. Norton within the otherwise-applicable 120-month statutory maximum, with a term of supervised release no greater than three years. *See* 18 U.S.C. §§ 924(a)(2), 3559(a)(3), & 3583(b)(2).

Dated: February 2, 2022

Respectfully submitted,

*/s/ Keala C. Ede*

KEALA C. EDE
Assistant Federal Defender
Attorney ID No. 387316

JORDAN C. HUGHES
Federal Defender Law Clerk

Office of the Federal Defender
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Attorney for Anthony M. Norton